860 A.2d 923

IN THE MATTER OF THE GUARDIANSHIP OF J.N.H., A MINOR.

Argued April 29, 2002—Remanded June 26, 2002—Reargued
September 27, 2004—Decided November 18, 2004.

*Arlene Gilbert Groch* argued the cause for appellant C.H.G.

*Sonia G. Wagner,* Assistant Deputy Public Defender, Law Guardian, argued the cause for respondent J.N.H., (*Yvonne Smith Segars,* Public Defender, attorney).

*James P. Gentile,* Deputy Attorney General, argued the cause for respondent New Jersey Division of Youth and Family Services (*Peter C. Harvey,* Attorney General of New Jersey, attorney; *Michael J. Haas,* Assistant Attorney General, of counsel; *Lisa J. Godfrey,* Deputy Attorney General, on the brief).

PER CURIAM.

In 1998, the trial court entered an order terminating the parental rights of C.H.G. over her son, J.N.H., as a result of her unremitting substance abuse. In 2001, C.H.G., who had by then completely transformed her life, moved for vacation of the 1998 order under *R.* 4:50–1(e) and (f). The trial court denied the motion and the Appellate Division affirmed.

We granted C.H.G.'s petition for certification and, in an opinion that details the history of the case, *In re Guardianship of J.N.H.,* 172 *N.J.* 440, 799 *A.*2d 518 (2002), remanded the matter to the trial court for a full hearing to determine whether the judgment terminating C.H.G.'s parental rights "continues to be a just and

equitable outcome." *Id.* at 479, 799 *A.*2d 518. Among our concerns were evidence of C.H.G.'s present fitness as a parent; a suggestion that J.N.H. was responding negatively to the termination of contact with C.H.G.; the absence of a recent psychological evaluation of J.N.H.; and the foster family's expressed intent to terminate any contact between C.H.G. and J.N.H. upon adoption.

The trial court did as we instructed, and after a hearing that included updated bonding and psychological evaluations of all parties, issued a thorough and thoughtful opinion concluding that J.N.H.'s need for permanency and his identification with his foster parents as his psychological family warranted termination of the parental rights of C.H.G., notwithstanding her present ability to be a fit parent. The expert and fact testimony in the record fully supports that conclusion and we affirm.

In ruling, the trial court recognized that all of the experts in the case had concluded that continued contact between J.N.H. and C.H.G. was necessary to foster the child's best interests. The court refused to order such visitation, however, in light of the foster parents' agreement voluntarily to continue contact between J.N.H. and C.H.G., and because it viewed an order of post-adoption visitation to be beyond its power under this Court's decision in *In the Matter of the Guardianship of K.H.O.*, 161 *N.J.* 337, 736 *A.*2d 1246 (1999). C.H.G. challenges the trial court's conclusion regarding visitation.

We decline to address the thorny issue of mandatory post-adoption visitation at this point. That issue is not ripe for review or adjudication because none of the parties in their briefs argued that this Court should revisit *K.H.O.* and allow for such court-ordered visitation. We take the foster parents at their word and expect that, as they have promised, they will provide J.N.H. such opportunities to visit with C.H.G. and his natural siblings as are necessary to his continued welfare and happiness.

Affirmed.

Justice LONG concurring in part and dissenting in part.

I am in full accord with the majority's affirmance of the judgment terminating C.H.G.'s parental rights over J.N.H. I am, however, not as sanguine as my colleagues regarding whether the foster parents will account for their stewardship and continue to promote visitation between J.N.H. and his mother. For that reason, and to forestall further acrimonious legal proceedings, I would rule now in favor of enforceable post-adoption visitation between C.H.G. and J.N.H. based upon the "exceptional circumstances" doctrine that we recently recognized as permitting the exercise of our *parens patriae* jurisdiction to protect a child. *See V.C. v. M.J.B.*, 163 *N.J.* 200, 219, 748 *A.2d* 539 (2000)(holding psychological parenthood as one example of exceptional circumstances warranting judicial award of custody or visitation to third party).

Here every shred of evidence adduced at trial supported the conclusion that a continuation of the long-standing visitation between C.H.G. and J.N.H. is essential to avoid serious harm to J.N.H. That said, an enforceable order of visitation should be entered now to protect J.N.H. and to ensure that the termination of C.H.G.'s parental rights will not, in the long run, "do more harm than good." *N.J.S.A.* 30:4C–15.1. I have absolutely no difficulty denominating the unique circumstances before us as "exceptional", compelling judicial intervention.

*For affirmance*—Chief Justice PORITZ, and Justices LaVECCHIA, ZAZZALI, ALBIN, WALLACE, and RIVERA-SOTO—6.

*For Concurrence in part; Dissent in part*—Justice LONG—1.